UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BROOKSHIRE MANAGEMENT INC., *doing business as* TRAVEL LEADERS INDIANAPOLIS,        )<br>)<br>)<br>)<br>*Plaintiff,*        )<br>)<br>v.        )<br>)<br>ADT LLC/DEFENDERS, INC.,        )<br>)<br>*Defendant*.        ) | No. 1:22-cv-01086-JMS-DML |

**ORDER**

Plaintiff Brookshire Management Inc., doing business as Travel Leaders Indianapolis, ("Travel Leaders"), alleges that Defendant ADT LLC/Defenders, Inc. ("ADT") breached the terms of a Corporate Travel Agreement (the "Agreement") wherein Travel Leaders agreed to provide travel booking services to ADT. [Filing No. 6-2 at 1.] ADT has filed a Motion to Dismiss, which seeks dismissal of Travel Leaders' claims pursuant to Fed. R. Civ. P. 12(b)(6). [Filing No. 10.] ADT's Motion has been fully briefed and is ripe for the Court's review. [Filing No. 11; Filing No. 22; Filing No. 23.]

**I.**
**STANDARD OF REVIEW**

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007.)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635

1

F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (*quoting* Twombly, 550 U.S. at 570). The Court may not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See* McCauley v. City of Chicago, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." Munson v. Gaetz, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following factual allegations are set forth in Travel Leaders' Complaint, [Filing No. 6-2], which the Court must accept as true at this time.

On January 15, 2018, Travel Leaders and Defenders Inc. ("Defenders") entered into the Agreement which provided that Travel Leaders would serve as a full-service travel agency for Defenders' corporate travel needs for three years. [Filing No. 6-2 at 2.] Defenders was subsequently acquired by ADT, and "ADT took on all obligations of the Agreement." [Filing No. 6-2 at 2.] Following the acquisition, the relationship between Travel Leaders and ADT continued to be "satisfactory at a local level." [Filing No. 6-2 at 2.] In December of 2020, the Agreement automatically renewed for two additional years when "no notice to the contrary" was provided. [Filing No. 6-2 at 3.]

The Agreement states that "the estimated volume value for the [Agreement] is $4,000,000.00 per year but that upon a variation of more than twenty-five percent (25%), 'either party reserves the right to re-negotiate the scope of service and associated cost.'" [Filing No. 6-2

at 4.] The Agreement further states that ADT "agrees to regularly communicate with [Travel Leaders'] management and executives to ensure the success of this agreement." [Filing No. 6-2 at 4.]

Beginning in the first quarter of 2021, Travel Leaders noticed that its business volume from ADT had "dropped significantly despite the renewal of the Agreement." [Filing No. 6-2 at 3.] Travel Leaders alleges that the travel volume "dropped below the anticipated volume of the [Agreement] because [ADT] refused to honor the terms of the Agreement, not because of any unexpected or unintended drop in travel demand." [Filing No. 6-2 at 5.] Travel Leaders attempted to communicate the loss in travel volume to ADT, but ADT failed to "adequately communicate" with Travel Leaders and has provided "no reason for [its] failure to comply with the Agreement." [Filing No. 6-2 at 3.] Moreover, despite "numerous attempts," ADT has been "unwilling to engage in a good-faith re-negotiation of the Agreement as it was required to do." [Filing No. 6-2 at 5.] On January 10, 2022, ADT provided Travel Leaders with notice of non-renewal of the Agreement. [Filing No. 6-2 at 3.]

Travel Leaders alleges that ADT has breached the terms of the Agreement in three ways: (1) failing to communicate as required by the Agreement; (2) refusing to engage in a good-faith renegotiation of the Agreement; and (3) failing to satisfy "demands for payment representing the monthly net revenue loss incurred due to [ADT's] refusal to provide the travel volume outlined in the Agreement," amounting to $188,939.71 as of December 17, 2021. [Filing No. 6-2 at 4-6.] Travel Leaders seeks "damages in an amount sufficient to compensate it for all outstanding invoices undisputed" by ADT, as well as an award of its costs, attorneys' fees, prejudgment interest, and expenses. [Filing No. 6-2 at 6.]

Travel Leaders initially filed its Complaint in the Marion Superior Court on April 20, 2022. [Filing No. 6-2.] On May 26, 2022, ADT removed the case to this Court pursuant to 28 U.S.C. § 1332. [Filing No. 1.]

### III.
#### DISCUSSION

In support of dismissal, ADT argues that Travel Leaders' claims fail as a matter of law because "it cannot identify a provision of the [Agreement] that ADT allegedly breached," but even if it could, there are no facts that support a causal connection between the alleged breach and the damages that Travel Leaders seeks.[1]  [Filing No. 11 at 6.]  Specifically, ADT argues that the Agreement does not require it to communicate with Travel Leaders regarding a decrease in its estimated travel volume or to meet a specific travel volume.  [Filing No. 11 at 6-8.]  While the Agreement provides an estimated volume of work, ADT argues the "clear language" of the Agreement establishes that this was not a requirement because "the parties understood this estimate could fluctuate by more than 25% in either direction" and the Agreement "allows each party—if the party chooses—the option to re-negotiate the scope of the [Agreement] in the event of a substantial decrease." [Filing No. 11 at 8-9.] Even if ADT did breach the Agreement, it argues that Travel Leaders failed to plead "any factual allegations showing" how its failure to communicate resulted in a monetary loss, and therefore any alleged loss in revenue is purely speculative because the parties never agreed to a specific travel volume. [Filing No. 11 at 9-10.] Finally, ADT argues that even if it were required under the Agreement to provide a specified travel

---

[1] Travel Leaders did not attach the Agreement as an exhibit to its Complaint. [Filing No. 6-2.] However, the Agreement was attached as an exhibit to ADT's Motion. [Filing No. 11-1.] Because the Agreement is referenced in the Complaint and is central to Travel Leaders' claims, the Court may consider the Agreement without converting ADT's Motion into a Motion for Summary Judgment. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

volume, it would have been impossible to do so because, during the relevant time period, "many cities across the country and the world had made business travel impossible because of the Covid-19 pandemic," and therefore ADT should be excused for any failure to "provide the same travel volume [as] it did prior to [the] Covid-19 pandemic." [Filing No. 11 at 10-11.]

Travel Leaders responds that the Agreement is a requirements contract, which requires ADT to "book all of its travel through Travel Leaders," and that it has adequately alleged a breach of a requirements contract because "ADT continued to travel, just not with Travel Leaders." [Filing No. 22 at 3-5.] Accordingly, ADT argues that the "appropriate question in a requirements contract is whether the reduction in offered goods or services was done in good faith," and it has adequately pled that ADT's reduction in travel volume was not in good faith based on the drop in travel, refusal to communicate, and "subsequent attempt to cancel." [Filing No. 22 at 6.] Regarding ADT's purported failure to communicate, Travel Leaders argues that the Agreement requires that if the travel volume varied by 25%, "either party reserves the right to re-negotiate the scope of service and associated costs," but it was denied this right by ADT's "continued lack of effort to communicate." [Filing No. 22 at 7.] Travel Leaders argues that it "was merely required to allege facts sufficient to support a plausible inference that it sustained damages; it need not have specifically identified what damages it sustained." [Filing No. 22 at 8.] Finally, Travel Leaders argues that ADT's impossibility defense is not appropriate for resolution on a Motion to Dismiss because "that determination cannot be fairly made without conducting discovery," but even so, it is "dubious to infer that [ADT's] travel volume – even if impacted by COVID – went from $4 million to $0 in the first quarter of 2021" based on the timing of the pandemic. [Filing No. 22 at 9.]

ADT replies that Travel Leaders' Response was untimely and, therefore, the Court should summarily grant the Motion to Dismiss. [Filing No. 23 at 1-2.] Additionally, ADT argues that the Agreement is not a requirements contract because it does not involve the sale of goods, and nothing in the Agreement requires ADT to "look exclusively to Travel Leaders for its travel arrangements." [Filing No. 23 at 2-6.] Finally, ADT reasserts its arguments that Travel Leaders cannot identify a provision in the Agreement that creates the obligations that Travel Leaders alleges it breached, and even if it had breached those obligations, Travel Leaders cannot establish a causal connection between those obligations and its alleged damages. [Filing No. 23 at 4-9.]

The Court will first address the timeliness of Travel Leaders' Response before turning to ADT's dismissal arguments.

### A. The Timeliness of Travel Leaders' Response

Travel Leaders' Response to ADT's Motion was due on June 23, 2022, but it did not file its Response until July 5, 2022. [Filing No. 22.] Travel Leaders neither sought leave from the Court for additional time to respond nor offered an explanation for its delay. [Filing No. 22.] The Local Rules for the Southern District of Indiana provide that the Court "may summarily rule on a motion if an opposing party does not file a response within the deadline." S.D. Ind. Local Rule 7-1(c)(5). While the Court could summarily grant ADT's Motion to Dismiss, it prefers to decide motions on the merits and does so here. However, counsel for Travel Leaders are reminded of their obligation to comply with applicable procedural rules and is warned that they should not depend upon the Court's lenience going forward.

### B. ADT's Substantive Dismissal Arguments

The parties agree that Indiana law applies in this case. Because the Court is exercising diversity jurisdiction in this matter, it must "decide issues of Indiana state law" as it predicts "the

6

Indiana Supreme Court would decide them today." *Doermer v. Callen*, 847 F.3d 522, 527 (7th Cir. 2017). Under Indiana law, the three elements of a breach of contract claim are: (1) the existence of a contract; (2) the defendant's breach thereof; and (3) damages suffered as a result. *Trustees of Indiana Univ. v. Spiegel*, 186 N.E.3d 1151, 1158 (Ind. Ct. App. 2022). For a plaintiff to prevail on a breach of contract claim, the defendant must have failed to perform in accordance with an obligation under the agreement. *Id.*

An unambiguous contract is "interpreted as a matter of law by reading the contract as a whole." *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 804 F.3d 1229, 1231 (7th Cir. 2015) (citing *Lawson v. Sun Microsystems, Inc.,* 791 F.3d 754, 762 (7th Cir. 2015)). Accordingly, the terms of the Agreement will be given "their ordinary meanings, with the ultimate goal of determining the parties' intent." *Id. (citing Brockmann v. Brockmann,* 938 N.E.2d 831, 834–35 (Ind. Ct. App. 2010)).  The terms of an unambiguous contract control over contrary allegations in the Complaint. *McWane, Inc. v. Crow Chicago Indus., Inc.,* 224 F.3d 582, 584 (7th Cir. 2000).

Here, the central issue of the parties' dispute is not the existence of a contract but what their respective obligations were under the Agreement. Travel Leaders contends that the Agreement requires ADT to utilize Travel Leaders to book all of its travel and to permit it to renegotiate the Agreement in good faith if travel volume falls below a certain amount. ADT contends that the Agreement imposes no such obligations. The Court addresses each of the parties' arguments below.

### 1. Breach of a Requirements Contract

The parties agree that the Agreement does not state a specific travel volume that ADT was required to book through Travel Leaders. [2] [Filing No. 11 at 7; Filing No. 22 at 5; Filing No. 23 at 6.] Instead, Travel Leaders contends that it has stated a plausible claim for breach of contract because the Agreement was a requirements contract, which "designated Travel Leaders as ADT's sole 'agent for the supplier of the travel services' to [ADT]." [Filing No. 22 at 6.] The Court disagrees.

The Seventh Circuit has explained that, under Indiana law, a requirements contract is "'one in which the purchaser agrees to buy all of its needs of a specified material exclusively from a particular supplier, and the supplier agrees, in turn, to fill all of the purchaser's needs during the period of the contract.'" *Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.,* 186 F.3d 815, 817 (7th Cir. 1999) (quoting *Indiana–American Water Co. v. Seelyville*, 698 N.E.2d 1255, 1259 (Ind. Ct. App. 1998)). Under Indiana law, "[a]n agreement *is not* a requirements contract unless it: '(1) obligates the buyer to buy goods, (2) obligates the buyer to buy goods exclusively from the seller, and (3) obligates the buyer to buy all of its requirements for goods of a particular kind from the seller.'" *BRC Rubber,* 804 F.3d at 1231 (citing *Zemco,* 186 F.3d at 817) (emphasis original).

Setting aside the fact that the Agreement does not concern the sale of goods, Travel Leaders' argument fundamentally fails because the Agreement does not speak to any sort of exclusive relationship between the parties or otherwise obligate ADT to book any amount of its travel through Travel Leaders. [*See* Filing No. 11-1.] To support its position that the Agreement

---

[2] While not entirely clear to the Court, the Complaint seems to allege that the Agreement required ADT to provide a specific travel volume to Travel Leaders. [Filing No. 6-2 at 4 ("[ADT] has materially breached the Agreement by . . . failing to provide the travel volume outlined in the Agreement.").] However, Travel Leaders concedes in its Response that the travel volume outlined in the Agreement is an estimate. [Filing No. 22 at 5.]

required ADT to exclusively book travel through it, Travel Leaders points to two provisions of the Agreement. [Filing No. 22 at 6.] First, Travel Leaders argues that the Agreement provides that it was to be ADT's "sole 'agent for the supplier of the travel services.'" [Filing No. 22 at 6 (citing Filing No. 11 at 5.).] However, this is an inaccurate and misleading representation of the language of the Agreement. The actual language of this provision of the Agreement states:

> **7. DISCLAIMER**
>
> [Travel Leaders], in providing travel consultation services, making reservations and issuing airline tickets and other documents to its clients, acts solely in that capacity as the agent for the supplier of the travel services.
>
> [Travel Leaders] does not guaranty or insure the services to be provided by any supplier. [Travel Leaders] assumes no responsibility for actions beyond the control of [Travel Leaders] in connection with travel services. [Travel Leaders] is not responsible or liable for any act, error, omission, injury, loss, accident, damage, delay, nonperformance, irregularity, or any consequences there from, which may be occasioned through the neglect or default, or any other act or inaction of any supplier.

[Filing No. 11-1 at 5.] The plain language of this provision establishes that Travel Leaders was acting solely in the capacity as the travel supplier's agent, as compared to acting in some other capacity—not that Travel Leaders was acting as ADT's sole agent. In fact, the term "sole agent" appears nowhere in the Agreement or the Complaint. [*See* Filing No. 6-2; Filing No. 11-1.]

Additionally, Travel Leaders argues that the Agreement requires ADT to utilize Travel Leaders to "make *all mode[s] of travel* arrangements" on ADT's behalf. [Filing No. 22 at 3 (emphasis original).] However, there are two problems with this assertion by Travel Leaders. First, the cited language also appears nowhere in the Agreement or the Complaint. [*See* Filing No. 6-2; Filing No. 11-1.] The actual wording of the Agreement states: "[w]hereas, [ADT] and [Travel Leaders] will arrange, plan, reserve, and ticket *all modes of passenger transportation*, lodging, and ancillary services *as may be requested* by authorized representatives of [ADT]." [Filing No.

9

11-1 at 1 (emphasis added).] An ordinary reading of this unambiguous provision establishes that "all" is modifying the types of transportation that Travel Leaders could arrange under the Agreement, not that Travel Leaders would arrange all transportation needed by ADT.

Second, the inclusion of the permissive clause "as may be requested" establishes that the obligation was on Travel Leaders to arrange transportation services upon ADT's request, not that ADT was required to use Travel Leaders to book transportation services. The Court notes that similar permissive language regarding ADT's obligations appears in multiple places throughout the Agreement. [*See, e.g.,* Filing No. 11-1 at 1 ("Based on this understanding, [Travel Leaders] shall provide the following services for [ADT's] authorized travelers and representatives as requested by [ADT]."); Filing No. 11-1 at 2 ("At [ADT's] request, [Travel Leaders] shall assist [ADT's] authorized travelers in obtaining the required documents for international travel.").]

Here, the Agreement's unambiguous language does not obligate ADT to book any corporate travel through Travel Leaders at all, and it certainly does not obligate ADT to book all of its travel exclusively through Travel Leaders. "Particular words and phrases cannot be read alone, and the parties' intentions must be determined by reading the contract as a whole." *Noble Roman's, Inc. v. Pizza Boxes, Inc.*, 835 N.E.2d 1094, 1098 (Ind. Ct. App. 2005). Therefore, the Court finds that the Agreement is not a requirements contract under Indiana law. *BRC Rubber*, 804 F.3d at 1233. The Court additionally finds that ADT did not have a duty to book any amount of corporate travel through Travel Leaders based on the plain language of the Agreement. As a matter of law, and based upon the plain language of the parties' contract ADT cannot be found to have breached the Agreement when it stopped booking travel through Travel Leaders.

10

> *2. Breach of an Obligation to Communicate and Renegotiate under the Agreement*

Alternatively, Travel Leaders asserts that it has stated a valid claim for breach of contract based upon ADT's alleged failure to communicate regarding travel volume loss or renegotiate the Agreement if ADT's travel volume dropped below the anticipated volume in the Agreement. [Filing No. 6-2 at 4-5.] The relevant Agreement provision regarding renegotiation states:

> **2. SERVICES PROVIDED BY [TRAVEL LEADERS]**
>
> This [Agreement] is based upon an estimated volume of work [ADT] anticipates will be managed by [Travel Leaders]. Estimated Client volume is $4,000,000.00 per year during the service agreement term stated above. If [ADT's] estimated volume varies more than 25% of the above stated, either party reserves the right to re-negotiate the scope of service and associated costs. Based on this understanding, [Travel Leaders] shall provide the following services for [ADT's] authorized travelers and representatives as requested by [ADT].

[Filing No. 11-1 at 1.]

The relevant contract provision regarding communication states:

> **3. SERVICES PROVIDED BY [ADT]**
>
> \*\*\*\*
>
> c. Open Communication
>
> [ADT] agrees to regularly communicate with [Travel Leaders'] management and executives to ensure the success of this Agreement. As events occur where [Travel Leaders] has either exceeded or fallen below the expectations of [ADT], quarterly meetings will ensure proper actions are taken to recognize such occurrences and respond accordingly.

[Filing No. 11-1 at 3.]

Travel Leaders alleges that ADT failed to "openly" and "adequately" communicate with it and that it "made communication attempts to discover who at ADT was responsible for the Agreement account and make note of the loss in travel volume and ongoing breaches of the Agreement." [Filing No. 6-2 at 1-3.] Travel Leaders further alleges that "ADT has not responded,

11

nor have they opened negotiation with Travel Leaders to remedy their refusal to perform their contractual obligations dating back to February 2021." [Filing No. 6-2 at 3.]

It is well settled that a contract must be reasonably definite and certain to be enforceable. *See Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 813 (Ind. 2009); *Zukerman v. Montgomery*, 945 N.E.2d 813, 819 (Ind. Ct. App. 2011); *Wolvos v. Meyer*, 668 N.E.2d 671, 675–676 (Ind. 1996) (stating that enforcement of incomplete or ambiguous writing creates a substantial danger that the court will enforce something neither party intended); *Wenning v. Calhoun*, 827 N.E.2d 627, 629 (Ind. Ct. App. 2005) ("In order to be enforceable, a contract must be reasonably definite and certain in its material terms so that the intention of the parties may be ascertained."); *Mead Johnson & Co. v. Oppenheimer*, 458 N.E.2d 668, 670 (Ind. Ct. App. 1984) ("It is fundamental contract law that a contract is unenforceable if it is so indefinite and vague that the material provisions cannot be ascertained.") (citations omitted).

Here, Travel Leaders generically alleges that ADT failed to "communicate" and "renegotiate." The Court finds that the relevant provisions of the Agreement are akin to an "agreement to agree," which are insufficient to support of breach of contract claim. *See Druco Restaurants, Inc. v. Steak N Shake Enterprises, Inc.*, 765 F.3d 776, 783–84 (7th Cir. 2014) ("In order to be enforceable, an agreement must be sufficiently certain and definite in all of the essential terms so that a court may ascertain when and whether it has been performed."); *Mays v. Trump Indiana, Inc.*, 255 F.3d 351, 357–58 (7th Cir. 2001) (an agreement to agree is not a binding contract under Indiana law). As the Seventh Circuit has explained, contracts must demonstrate an "intent to be bound and definiteness of terms" to be enforceable under Indiana law. *R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 941 (7th Cir. 2020) (holding that "[t]he phrase 'the parties will attempt to develop an agreement' on commissions is an unmistakable agreement to agree, not a

binding contractual commitment"). Here, the provisions under which Travel Leaders seeks recovery similarly lack the definiteness required to support a breach of contract claim under Indiana law.

However, even if ADT did have an enforceable obligation to communicate and renegotiate with Travel Leaders under the Agreement, any breach claim under these obligations still fails for the same reasons explained above—ADT was fundamentally under no contractual duty to utilize Travel Leaders to book any travel under the Agreement. Travel Leaders alleges that it was damaged due to a reduction in revenue, but it has not pointed to any provision of the Agreement which plausibly suggests that it is entitled to any revenue at any volume from ADT. The Agreement provides that Travel Leaders only receives revenue if ADT elects to utilize its services. [Filing No. 11-1 at 9.] Assuming for the sake of argument that the parties were in regular communication and had renegotiated the scope of the Agreement and the service fees provided therein, [Filing No. 11-1 at 9], there still would be nothing in the Agreement that required ADT to book any travel with Travel Leaders at any rate, renegotiated or otherwise. Accordingly, there could be no damages due to ADT's alleged failures.

"In every valid [breach of contract action,] two elements must be present, the injury and the damages. The one is the legal wrong which is to be redressed; the other, the scale or measure of the recovery." *Ent. USA, Inc. v. Moorehead Commc'ns, Inc*., 897 F.3d 786, 793 (7th Cir. 2018) (quoting *City of North Vernon v. Voegler*, 103 Ind. 314, 2 N.E. 821, 824 (1885)). Here, Travel Leaders has failed to plausibly allege both of these "essential elements" of any breach of contract claim. See *Old Nat'l Bank v. Kelly*, 31 N.E.3d 522, 531 (Ind. App. 2015) (quoting *Holloway v. Bob Evans Farms, Inc*., 695 N.E.2d 991, 995 (Ind. App. 1998)).

For the reasons explained above, the Court finds that Travel Leaders has failed to state a claim for breach of contract. Accordingly, ADT's Motion to Dismiss is **GRANTED** and the Court need not address ADT's impossibility argument.

### C. Travel Leaders' Candor Toward the Tribunal

The Court concludes by noting its displeasure with Travel Leaders' approach to defending against ADT's Motion to Dismiss. Travel Leaders not only disregarded the deadline for filing a Response without explanation and without permission, it also premised its Response upon completely fabricated representations of the Agreement's language. As the Seventh Circuit has observed:

> [F]alsifying evidence to secure a court victory undermines the most basic foundations of our judicial system. If successful, the effort produces an unjust result. Even if it is not successful, the effort imposes unjust burdens on the opposing party, the judiciary, and honest litigants who count on the courts to decide their cases promptly and fairly.

*Secrease v. W. & S. Life Ins. Co.,* 800 F.3d 397, 402 (7th Cir. 2015). The Court reminds counsel for Travel Leaders that this type of conduct can result in potentially dire consequences for both litigants and attorneys alike. For a litigant, a deliberate effort to mislead the Court is a sufficient basis to dismiss a party's claims with prejudice. *Id.* (noting that courts have "an interest in both punishing a party's dishonesty and deterring others who might consider similar misconduct").

For an attorney, deliberate misrepresentations to the Court implicate an attorney's ethical obligations to the Court in three ways. First, Rule 11 of the Federal Rules of Civil Procedure requires that when an attorney signs a filing presented to the Court, the attorney certifies "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . . the factual contentions have evidentiary support . . ." Fed. R. Civ. P. 11(b). Rule 11 authorizes the Court to impose appropriate sanctions, including monetary

sanctions, on any attorney, law firm, or party who violates this rule. Fed. R. Civ. P. 11(c). Second, under 28 U.S.C. § 1927, the Court may sanction an attorney "if the attorney has acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice . . . or where a claim [is] without a plausible legal or factual basis and lacking in justification." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 708 (7th Cir. 2014). Finally, the Indiana Rules of Professional Conduct demand that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal or . . . offer evidence that the lawyer knows to be false." Ind. R. of Prof. Cond., R. 3.3.

While the Court will not impose sanctions at this juncture, Travel Leaders and its counsel should consider this Order a very direct warning. The Court cautions Travel Leaders and its counsel against employing this strategy again in the future.

## IV.
### CONCLUSION

In the immortal words of Billy Preston, "nothing from nothing leaves nothing." Billy Preston, "Nothing from Nothing," The Kids & Me, A&M Records (1974). Here, the Agreement places no obligation on ADT to utilize Travel Leaders' services and, therefore, any purported failure to do so does not constitute an actionable claim for breach of contract. Therefore, ADT's Motion to Dismiss, [10], is **GRANTED**. Travel Leaders claims against ADT are **DISMISSED WITH PREJUDICE**.[3] Final judgment shall enter accordingly.

Date: 9/29/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**

---

[3] Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend its Complaint once as a matter of course in response to a motion to dismiss. *Brown v. Bowman*, 2011 WL 1296274, *16 (N.D. Ind. 2011). The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion." Here, Travel Leaders chose not to revise its allegations despite being aware of ADT's arguments in support of dismissal and chose instead to brief the current Motion to Dismiss and adjudicate the issues. The Court is not required to give Travel Leaders another chance to plead its claims, particularly in light of the clear and unambiguous language of the Agreement, and, in its discretion, the Court dismisses those claims with prejudice.